# NORTHWESTERN MUTUAL LIFE . INSURANCE COMPANY *v.* JOHNSON.

# NATIONAL . LIFE INSURANCE COMPANY OF MONTPELIER, VERMONT, *v.* MILLER, ADMINISTRATOR OF JOHNSON.

### CERTIFICATES FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

Nos. 70, 71. Submitted October 22, 1920.—Decided November 15, 1920.

A provision in a life insurance policy declaring that the policy shall be void if within a certain time the insured, while sane or insane, shall die by his own hand, and a provision making the policy incontestable after a certain time, are both to be interpreted. as implying that suicide of the insured, sane or insane, after the time specified, shall not be a defense. P. 102.

The validity of such agreements to pay life insurance, even when death is due to suicide, if it occur after the lapse of a certain time, depends upon the state public policy. Where it did not appear in what State the contracts in question were made, the court upheld them, which, *semble*, is in accord with the rule generally prevailing. P. 100.

THE cases are stated in the opinion.

*Mr. George Lines* for Northwestern Mutual Life Insurance Company. *Mr. Sam T. Swansen* was also on the brief:

It is undoubtedly the rule of the federal courts, as assumed in the question certified, that, where a policy of life insurance is silent respecting liability of the company in case of suicide by the insured, death of the insured by his own hand, he being sane, is not one of the risks insured against. *Ritter* v. *Mutual Life Ins. Co.,* 169 U. S. 139; *Hopkins* v. *Northwestern Life Assurance Co.,* 94 Fed. Rep.

729; *Mutual Life Ins. Co. v. Kelly,* 114 Fed. Rep. 268; *Royal Arcanum v. Wishart,* 192 Fed. Rep. 453.

So, death at the hands of the law as a punishment for crime is not one of the risks insured against, whether so stipulated in the policy or not. *Burt v. Union Central Life Ins. Co.,* 187 U. S. 362; *Northwestern Mutual Life Ins. Co. v. McCue,* 223 U. S. 234. Nor is death at the hands of the beneficiary, assignee or other person entitled to the proceeds. *New York Mutual Life Ins. Co. v. Armstrong,* 117 U. S. 591.

The decisions in these cases affirm and are based upon two fundamental principles: (1) That it is a condition of every policy of life insurance, implied if not expressed, that neither the insured nor the beneficiary shall do anything to wrongfully accelerate the maturity of the policy; and (2) that a contract by which an insurance company agreed to pay the sum stipulated in its policy upon the happening of either of the contingencies involved in the cases above cited would be contrary to public policy and void for that reason. Well-reasoned decisions of state courts are in harmony with the conclusions reached in the cases above cited. *Supreme Commandery v. Ainsworth,* 71 Alabama, 436, 445–447; *Hartman v. Keystone Ins. Co.,* 21 Pa. St. 466, 479; *Security Life Ins. Co. v. Dillard,* 117 Virginia, 401; *Davis v. Supreme Council,* 195 Massachusetts, 402; *Scarborough v. American National Life Ins. Co.,* 171 N. Car. 353; *Hatch v. Mutual Life Ins. Co.,* 120 Massachusetts, 550, 552; *Bloom v. Franklin Ins. Co.,* 97 Indiana, 478; *American National Ins. Co. v. Munson,* 202 S. W. Rep. 987.

These authorities establish not only the doctrine that death of the insured, directly and intentionally caused by himself when in sound mind, is not a risk intended to be covered by a policy of insurance which is silent respecting suicide, but the further doctrine that such risk is one which, on grounds of public policy, cannot lawfully be included by express stipulation.

98　　　　　OCTOBER TERM, 1920.

Argument for Northwestern Mutual Life Insurance Co.　254 U. S.

But if, as held in the cases above cited, death of the insured, directly and intentionally caused by himself when in sound mind, is a risk which could not legally have been covered during the whole life of the policy, even by express stipulation to that effect, it is clear that such risk could not have been so covered during a portion of its life; and it necessarily follows that a contract to insure against such risk after two years from the date of the policy cannot be implied from the language quoted in Question One.

Under all the authorities, the doctrine that death of the insured by his own hand is not a risk insured against applies only in case the insured was sane at the time of taking his life. The object and effect of the quoted clause is to extend during the first two years of the policy's life exclusion of the risk of suicide to cases where the insured is insane, as well as to those where he is sane at the time of taking his life. *Royal Arcanum* v. *Wishart*, 192 Fed. Rep. 453, 456; *Scarborough* v. *American National Life Ins. Co., supra; Collins* v. *Metropolitan Life Ins. Co.*, 27 Pa. Super. Ct. Rep. 356; *American National Life Ins. Co.* v. *Munson, supra; Bromley* v. *Washington Life Ins. Co.*, 122 Kentucky, 407.

It is immaterial that the beneficiary named in the policy in suit was the wife of the insured, instead of his executors or administrators, as in the *Ritter Case*.

In discussing the first question certified, we have argued that intentional self-destruction while sane is a risk not covered by a policy "which makes no provision for death resulting from suicide," i. e., is silent concerning the same. If this contention be sound, it necessarily follows that such a policy is not void, for, in such case, death by suicide being excluded from the risks covered by the policy, its validity as a contract respecting the risks included therein is not in any way affected. This conclusion is not affected by the fact that the policy contains a provision, that "if within two years from the date hereof, the said insured

shall  .  .  .  while sane or insane, die by his own hand,
.  .  .  this policy shall be void." This provision cannot by implication make suicide of the insured while sane one of the risks insured against, after the expiration of the two-year period, when an express stipulation to that effect, being contrary to public policy, would be void. As the authorities hereinbefore cited show, the purpose and effect of the two-year provision above quoted is to further limit, not to enlarge, the risk assumed. We submit, therefore, that Question Two should be answered in the negative.

If, however, it is deemed that from the provision in the policy just quoted it is to be implied that death of the insured by suicide; while sane, after the expiration of two years from the date of the policy, is one of the risks covered by it, then we say that under the decisions of this court and the weight of well-considered authorities elsewhere the policy is void to that extent.

*Mr. George B. Young* for National Life Insurance Company. *Mr. E. D. Perry* and *Mr. Guy B. Horton* were also on the brief.

*Mr. S. F. Prouty* for Johnson and Miller.

MR. JUSTICE HOLMES delivered the opinion of the court.

These are suits upon policies issued to George P. Johnson upon his life, payable in the first case to his wife, in the second to his executors or administrators. The wife and the administrator respectively recovered in the District Court and the cases having gone to the Circuit Court of Appeals the latter has certified certain questions to this Court. The policy payable to the wife contained a provision that "if within two years from the date hereof, the said insured shall  .  .  .  die in consequence of a

duel, or shall, while sane or insane, die by his own hand, then, and in every such case, this policy shall be void." Johnson, the insured, died by his own hand more than two years after the date of the policy. The first question put in the wife's suit is whether the above provision, there being no other in the policy as to suicide, makes the insurance company liable in the event that happened. The second is in substance whether the contract if construed to make the company liable is against public policy and void.

The policy payable to the administrator had no provision as to suicide but did agree that "This contract shall be incontestable after one year from the date of its issue, provided the required premiums are duly paid." Johnson's suicide was more than a year after the date of the policy. The first question propounded is whether the above provision prevents the insurer from denying liability in this case, it not appearing that Johnson was insane when he killed himself. The second is whether such a contract which makes no exception for death resulting from suicide is against public policy, and therefore void. There is a third as to a possible distinction between insurance payable to the wife and that payable to the estate of the insured which will not need to be discussed.

The public policy with regard to such contracts is a matter for the States to decide. *Whitfield* v. *Ætna Life Insurance Co.*, 205 U. S. 489, 495. This case qualifies the statement in *Ritter* v. *Mutual Life Insurance Co.*, 169 U. S. 139, 154, to the effect that insurance on a man's own life payable to his estate and expressly covering suicide committed by him when sane would be against public policy. The point decided was only that when the contract was silent there was an implied exception of such a death. There was evidence that the insurance was taken out with intent to commit suicide, and it plainly appeared

that the act was done by the insured for the purpose of enabling his estate to pay his debts. The application, although excluded below, warranted against suicide within two years, within which time the death took place. So that all the circumstances gave moral support to the construction of the policy adopted by the Court in accordance with the view that has prevailed in some jurisdictions as to the general rule. In *Burt* v. *Union Central Life Insurance Co.*, 187 U. S. 362, it was held that there was a similar tacit exclusion from the risk assumed of the death of the insured by execution for murder, and the same decision was reached in *Northwestern Mutual Life Insurance Co.* v. *McCue*, 223 U. S. 234. But the question here does not concern implied exceptions, it concerns the effect of express undertakings which as we have said depends upon the policy of the State.

The certificates do not disclose in what States these contracts were made but it is not necessary to postpone our answer on that account. It appears from *Whitfield* v. *Ætna Life Insurance Co., supra,* that some legislatures have thought it best to insist that life insurance should cover suicide unless taken out in contemplation of the deed. But the case is much stronger when a considerable time is to elapse before the fact that the death was by the insured's own hand ceases to be a defence. The danger is less sinister and probably a good deal smaller than the danger of murder when the insurance is held by a third person having no interest in the continuance of the life insured, yet insurance on the life of a third person does not become void by assignment to one who has no interest in the life. *Grigsby* v. *Russell*, 222 U. S. 149. When a clause makes a policy indisputable after one or two years, the mere evocation of a possible motive for self-slaughter is at least not more objectionable than the creation of a possible motive for murder. The object of the clause is plain and laudable—to create an absolute assurance of the benefit,

as free as may be from any dispute of fact except the fact of death, and as soon as it reasonably can be done. It is said that the insurance companies now generally issue policies with such a clause. The state decisions, so far as we know, have upheld it. Unless it appears that the State concerned adopts a different attitude we should uphold it here. *Simpson* v. *Life Insurance Co. of Virginia,* 115 N. Car. 393; *Mareck* v. *Mutual Reserve Fund Life Association,* 62 Minnesota, 39; *Goodwin* v. *Provident Savings Life Assurance Association,* 97 Iowa, 226; *Patterson* v. *Natural Premium Mutual Life Insurance Co.,* 100 Wisconsin, 118.

We are of opinion that the provision in the first mentioned document avoiding the policy if the insured should die by his own hand within two years from the date is an inverted expression of the same general intent as that of the clause in the second making the policy incontestable after one year, and that both equally mean that suicide of the insured, insane or sane, after the specified time shall not be a defence. It seems to us that that would be the natural interpretation of the words by the people to whom they are addressed, and that the language of each policy makes the company issuing it liable in the event that happened. We answer the first question in each certificate, yes. The other questions are disposed of by our answer to the first.

*Answer to question 1 in No. 70, Yes.*
*Answer to question 1 in No. 71, Yes.*


Mr. Justice Day took no part in the decision of these cases.