## ÆTNA LIFE INS. CO. v. DU BARRY.

District Court, D. Oregon.

Sept. 30, 1935.

Senn & Recken, of Portland, Or., for complainant.

Ridgway, Johnson & Kendall, of Portland, Or., and Wilmon Tucker, of Seattle, Wash., for defendant.

McNARY, District Judge.

This is a suit to cancel a life insurance policy containing a disability benefit feature which provides that if the insured shall become totally and permanently disabled by the loss of both hands, he shall receive a stipulated sum as a monthly benefit.

The complainant alleges that the defendant lost both of his hands through

his own self-inflicted act; that defendant did intentionally discharge a shotgun and did through his own acts intentionally inflict said injuries for the purpose of collecting benefits under said policy.

The decisive question is whether these allegations and supporting evidence, if true, would entitle the plaintiff to its desired relief. In other words, will the law permit the defendant to profit by his own wrong, as set forth in the complaint.

In considering this question, the court must be guided by what is known as suicide cases, for the legal principles applicable to a case where an insured had committed suicide to accelerate the payment of his policy would control in a case where the insured had mutilated himself to hasten the payment of his disability benefits, unless there is an exception where the beneficiary is an executor or administrator and creditors have a vested right in the policy.

The decisions of the courts of this country on the question presented are not in harmony, but the weight of modern authorities sustains the conclusions here reached.

The first case of this nature that came before the United States Supreme Court was Ritter v. Mutual Life Insurance Co. of New York, 169 U. S. 139, 18 S. Ct. 300, 42 L. Ed. 693. The defense to the action on the policy was that the insured committed suicide. The court held that it was not contemplated by the policy that the company should be liable if death resulted from an act of the insured when of sound mind; that the death referred to in the policy was a death occurring in the ordinary life of the insured and not by his own violent act designed to bring about that event. It was there held that a policy expressly providing that the company should be liable in the event the insured should commit suicide would be void as against public policy.

The conclusions announced in the above case were qualified by the same court in the later case of Whitfield v. Ætna Life Insurance Co. of New York, 205 U. S. 489, 27 S. Ct. 578, 579, 51 L. Ed. 895. The insured was a resident of Missouri and had committed suicide. In that state there was a statute providing that in suits upon policies of insurance "It shall be no defense that the insured committed suicide * * * and any stipulation in the policy to the contrary shall be void." The court held that the statute was a legitimate exercise of the power of the state, and even if the statute could be regarded as inconsistent with public policy, it could not be disregarded, for it was in the province of the state to adopt the policy it deemed best, provided in so doing it did not conflict with the Constitution of the state or the Constitution of the United States.

The last decision of the Supreme Court upon the question under consideration was in the case of Northwestern Mut. Life Insurance Co. v. Johnson, 254 U. S. 96, 41 S. Ct. 47, 49, 65 L. Ed. 155. This was an action on two insurance policies. The first policy was payable to the wife of the insured, and the second policy was payable to his executor or administrator. The policy payable to the wife contained a provision that, "if within two years from the date hereof, the insured shall die in consequence of a duel or shall while sane or insane die by his own hand, then in every such case, this policy shall be void." The insured committed suicide more than two years after the date of the policy. The question determined was whether the above provision prevented the company from denying liability. Justice Holmes, speaking for the court, said that the "object of the clause is plain and laudable—to create an absolute assurance of the benefit, as free as may be from any dispute of fact except the fact of death"; and held that such clause means that suicide of the insured after the specified time of two years would not be a defense. This case unqualifiedly overruled the opinion in the Ritter Case, wherein Justice Harlan held that a policy expressly providing that the company should be liable in the event the insured committed suicide would be void as against public policy. The policy payable to the executor or administrator had no provision as to suicide, but stipulated that "this contract shall be incontestable after one year from the date of its issue, provided the required premiums are paid." A judgment in the lower court in favor of the personal representatives of the insured was affirmed.

It plainly appears that the Supreme Court of the United States by its later decision is committed to the doctrine that

suicide will not avoid an insurance policy unless it contained a provision declaring it shall be void in case of self-destruction of the insured or if it had been declared by legislative act or judicial edict to be against the public policy of the state to permit a policy to mature by reason of the suicide of the insured.

■ Cases have been cited holding that it is contrary to public policy to permit a recovery where an insured had been murdered by the beneficiary for the purpose of collecting the insurance and where an insured had burned his house for the same purpose. In these cases, crimes had been committed for the purpose of accelerating the payment of the policies, and obviously it is contrary to public policy to allow a beneficiary to profit by his criminal act.

Suicide and self-mutilation are not crimes in the state where this policy took effect; neither had it there been declared to be contrary to public policy to permit an insured to quicken the payment of his policy by reason thereof.

■ It is provided in the contract of insurance that "no benefit will be paid or allowed hereunder for disability resulting directly or indirectly on account of military or naval service by the insured in time of war." The language so employed clearly implies that benefits will be paid in all cases unless the disability resulted from such services. Furthermore, the application of the rule of construction expressio unius est exclusio alterius would limit the contractual exemptions to the coverage to the one specifically mentioned.

■ If the defendant intentionally injured himself for the purpose of collecting his disability benefits, it would not constitute a valid reason for the cancellation of the policy, for the act is not made a crime, and self-mutilation to facilitate the payment of benefits has not been declared to be contrary to the public policy of the state where the contract became effective; and again the insurance contract does not exempt the insurer from liability in such cases.

■ The policy in question provides that it shall be incontestable after it has been in force for a period of one year except for nonpayment of premiums. This provision is applicable to the income disability feature as well as the life insurance provisions. The injury to defendant occurred approximately eight years and nine months after the date of the policy. In discussing the meaning of a similar incontestable clause, Justice Cardozo said, "It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken." Metropolitan Insurance Co. v. Conway, 252 N. Y. 449, 169 N. E. 642.

The consensus of judicial opinions regarding the effect of an incontestable clause was clearly expressed by the Kentucky court in Sun Life Insurance Co. v. Taylor, 108 Ky. 408, 56 S. W. 668, 94 Am. St. Rep. 383: "The language providing that the policy should be incontestable does not restrict it to any particular grounds of contest, but it is broad and comprehensive enough to embrace any and every defense which might have been made to it before the expiration of three years. To say that it has reference to one defense, and not to another, is writing into the policy terms which the very language of it excludes." Of like effect is the recent decision of the Court of Appeals of this Circuit in New York Life Insurance Co. v. Kaufman (C. C. A.) 78 F.(2d) 398.

The incontestable clause in the insurance contract in question also bars plaintiff's right to its desired equitable relief.

A decree will be entered dismissing the complaint, and defendant will have a judgment for his costs and disbursements.