## SERVICE LIFE INS. CO. v. WEINBERG et al.

### No. 5506.

Circuit Court of Appeals, Seventh Circuit.
Jan. 13, 1936.

A. Philip Smith, of Rockford, Ill., and Lloyd Dort, of Omaha, Neb., for appellant.

John Early and B. B. Early, both of Rockford, Ill., and Charles O. Rundall, of Chicago, Ill., for appellees.

Before EVANS and ALSCHULER, Circuit Judges, and STONE, District Judge

ALSCHULER, Circuit Judge.

On August 14, 1934, appellant filed its bill in equity to cancel an insurance policy for $5,000 which had been issued August 14, 1929, by Union Pacific Assurance Company of America on the life of Julius Weinberg, his wife, Bessie, being the beneficiary. Appellant had reinsured the first insurer, and had assumed all liability under the policy. On appellees' motion the District Court dismissed the bill. Diversity of citizenship is the ground of federal jurisdiction.

The bill charges that before the date of Weinberg's application for the policy, and up to the issuance of the policy, Weinberg was suffering from, and had been under treatment for, diabetes; that

he had consulted physicians who had told him that he was so afflicted, and that his urine contained sugar; that at the time of making the application Weinberg, to his own knowledge, was in bad health and had been dieting and taking insulin; that the tendency of insulin is to arrest the progress of the disease, and either remove sugar from the urine or prevent its detection upon analysis; that Weinberg intentionally, knowingly, and fraudulently stated in his application for the insurance that he was in good health and that no physician had ever expressed an opinion that his urine contained sugar; that in reliance upon these statements the original insurer was induced to grant Weinberg the policy in question; that the insurer had no reason to suspect the alleged fraud until June 16, 1934, when Weinberg presented to the company a claim under the policy for total disability through loss of a leg, stating that the loss resulted from gangrene which was occasioned by the cutting of a corn on his toe, whereas, it is charged, the loss of the leg in fact resulted from Weinberg's diabetic condition; that the company at once notified Weinberg of its discovery of the fraud, denying all liability under the policy, tendering to him all premiums he had paid, and demanding return of the policy for cancellation.

■ The bill charges that the incontestability clause of the policy will be set up in defense, stating that such clause was required to be inserted in such policies by the Statutes of Illinois of 1921, p. 482 (Smith-Hurd Ann.St.Ill. c. 73, § 261); and it alleges that the incontestability clause has no application to cases of fraudulent misrepresentation in the procurement of the policy, nor to cases of fraudulent concealment of a cause of action, as to which the five-year limitation from time of discovery of the fraud applies, under Smith-Hurd Ann.St.Ill. c. 83, §§ 16, 23, Callaghan's Illinois Statutes Annotated, 1924, vol. 5, c. 83, §§ 16 and 23.

It is contended that the incontestability clause is required to be included in the policy by the Illinois statute, and that if it be applicable in the case of fraudulent procurement of the policy it would be violative of the Constitution of Illinois as well as that of the United States. The clause has been in operation in Illinois since 1908, and it has been frequently decided that unless the required time for investigation and discovery of fraud is so brief as to be unreasonable, the clause is not violative of constitutional rights. Northwestern Mut. Life Ins. Co. v. Johnson, 254 U.S. 96, 41 S.Ct. 47, 65 L.Ed. 155; Northwestern Mut. Life Ins. Co. v. Pickering (C.C.A.) 293 F. 496; Powell v. Mut. Life Ins. Co., 313 Ill. 161, 144 N.E. 825, 36 A.L.R. 1239, and cases there cited; Patterson v. Natural Prem. Mut. Life Ins. Co., 100 Wis. 118, 75 N.W. 980, 42 L.R.A. 253, 69 Am.St.Rep. 899.

The assertion that this clause was by statute forced upon the insurer is not warranted by the facts here. The incontestability clause of the statute specifies that after two years from the date of the policy it shall be incontestable. Smith-Hurd Ann.St.Ill. c. 73, § 261, Cahill's Ill.Rev.Stats., c. 73, par. 375. The clause in this policy specifies the period of *one year* from issue of the policy, after which it shall be incontestable. Thus the period wherein this policy might be contested was fixed by the voluntary act of the insurer, and not by any statute. It may be assumed that the company from its larger experience had concluded that one year was such a reasonable period; and there is no evidence to the contrary, assuming that such evidence was receivable, where the insurer had voluntarily fixed the time when incontestability commenced. But, in any event, this incontestability clause being a matter not of statutory requirement but of the insurer's volition, no question of constitutionality arises.

It is evident that in the highly competitive business of life insurance the shorter the period within which a policy may be contested the more desirable is the policy to the insured; and that one means of making the policy attractive to the public is to reduce the period within which the policy may be contested. This may explain why an insurance company would voluntarily incorporate in its policy an incontestability clause effective so soon after the policy issued.

■ That, in general, fraudulent representations in the procurement of a policy may not, after the beginning of the period of incontestability, statutory or contractual, be set up in defense to an action on the policy seems to be well established by the authorities. We had occasion to consider the question in State

Mut. Life Assur. Co. v. Stapp, 72 F.(2d) 142, and we reached the conclusion that the incontestability clause will, after it becomes operative, bar the defense of fraud in the procurement of the policy. Some other cases to like effect are Mut. Life Ins. Co. v. Hurni Packing Co., 263 U.S. 167, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102; Hurt v. New York Life Ins. Co. (C.C.A.) 51 F.(2d) 936; Russ v. Great Southern Life Ins. Co. (D.C.) 6 F.(2d) 940; Great Western Life Ins. Co. v. Snavely (C.C.A.) 206 F. 20, 46 L.R.A.(N.S.) 1056; Mut. Reserve Fund Life Ass'n v. Austin (C.C.A.) 142 F. 398, 6 L.R.A.(N.S.) 1064; Wright v. Mut. Ben. Life Ass'n, 118 N.Y. 237, 23 N.E. 186, 6 L.R.A. 731, 16 Am.St.Rep. 749.

■ But it is here specially stressed that the clause will not apply where the cause of action has been concealed by the insured. We assume that the cause of action referred to is the right to bring suit to cancel the policy.

Assuming the bill to have sufficiently stated a case which, but for the incontestability clause, would have justified cancellation, what, if anything, appears in the bill to indicate that after the policy was issued there was concealment of the fraudulent representations whereby its issuance was procured? Surely mere silence on the part of the insured, or his failure to reveal to the company the fraud he had practiced to procure its issue, would not be enough. Mere silence is not concealment. Bates v. Preble, 151 U.S. 149, 14 S.Ct. 277, 38 L.Ed. 106; Wood v. Carpenter, 101 U.S. 135, 25 L.Ed. 807. If this were not so, the incontestability clause would be of very little practical effect, since alleged fraud in procurement of the policy would, if unrevealed to the insurer, forever remain a weapon of defense, unaffected by the very incontestability clauses designed to prevent such defenses after the specified time.

The condition which gave rise to and induced the statutory or voluntary inclusion in policies of incontestability clauses undoubtedly was a growing public distrust of life insurance through the frequency of the contention by insurance companies of invalidity of policies because of some asserted misrepresentation by the insured in his application for the policy.

■ The only suggestion in the bill, apart from insured's silence, of his active concealment of the fraud after the issuance of the policy is found in the charge that, nearly five years after the policy was issued, the insured made to appellant a written statement to the effect that he had become totally disabled through the loss of a leg occasioned *by cutting a corn on his foot,* and claiming indemnity therefor under the policy. It is not charged that Weinberg did not in fact cut his corn, nor that as an ultimate result of such cutting he did not lose his leg. True, the bill says he lost his leg because of his diabetes; but this does not militate against the statement that it was the cutting of the corn which set into activity conditions which necessitated the loss of the leg. That there was an intervening contributing cause or condition, such as diabetes, does not make false or render fraudulent the statement that it was the cutting of the corn which activated a possibly latent condition which materially contributed to the loss of the leg. It is common knowledge that a thing so insignificant as a pin scratch may ultimately result in serious conditions, occasionally causing amputation and even fatality. The insistence that through this statement respecting the cutting of his corn insured concealed from the insurer his fraud in the procurement of the policy, is not borne out by any facts stated in the bill.

■ But, in any event, this alleged concealment, if concealment it was, did not occur until nearly four years after the policy by its terms had become incontestable. Whatever the insured may have done after incontestability became fixed —whether done in good faith or in bad, fraudulent or otherwise—could not affect the policy or liability under it. At that time the alleged fraudulent representations in the procurement of the policy were not available to appellant as a defense; and the insurer's right to cancel the policy, which may have been perfect during the year next following its issuance, was wholly ineffectual to that end once the year had passed which brought the incontestability clause into effect.

The District Court's decree of dismissal is affirmed.