**MONAHAN v. NEW YORK LIFE INS. CO.**
(two cases).

**MUTUAL LIFE INS. CO. OF NEW YORK v. MONAHAN.**

Nos. 6386, 6300, 1898.

District Court, W. D. Oklahoma.
March 2, 1939.

Suits & Lewis, of Oklahoma City, Okl., for Monahan.

Embry, Johnson, Crowe & Tolbert, of Oklahoma City, Okl., for Mutual Life Ins. Co. of New York.

Wilson & Wilson, of Oklahoma City, Okl., for New York Life Ins. Co.

MURRAH, District Judge.

Suit No. 1898 Equity was instituted by Mutual Life Insurance Company of New York, hereinafter called Company, against Donnie Monahan, as beneficiary of Ed Monahan, Jr., hereinafter called Beneficiary, under the Federal Declaratory Judgment Act, Title 28 U.S.C.A. § 400, Suits No. 6300 Law and No. 6386 Law were instituted by Donnie Renegar, formerly Donnie Monahan, also hereinafter called Beneficiary against the New York Life Insurance Company of New York, also hereinafter called Company.

The last two suits were filed in the District Court of Oklahoma County, and removed to this Court by reason of diversity of citizenship. The three suits involve the construction of the double indemnity clause of six contracts of insurance, issued by these insurance companies upon the life of Ed Monahan, Jr. The same facts and substantially the same questions of law are involved in all the suits and policies constituting the subject matter of the suits. The suits were consolidated for trial; evidence was heard; at the conclusion of which, the Court directed a verdict for plaintiff in case No. 1898 Equity and for the defendants in cases No. 6300 Law and No. 6386 Law; the judgment of the Court applying similarly to all the contracts of insurance involved. The beneficiary under rule 50 of Federal Rules of Procedure, 28 U.S.C.A. following section 723c, filed a motion for judgment, notwithstanding the directed verdict, and for a new trial in the alternative.

Because of the nicety of the questions of law involved the Court deems it advisable to set forth its opinion and conclusions.

Four of the contracts of insurance involved contained the same or substantially the same provisions and conditions relating to double indemnity benefits and incontestability. These policies will be classified and referred to herein as group "A". Two of the contracts of insurance, although having the same, or substantially the same, provisions and conditions relating to double indemnity benefits, do not contain identically the same conditions and provisions in the incontestable clause and they will be classified and referred to herein as group "B".

Ed Monahan, Jr., during his lifetime, made application for the contracts of insurance, in question, in the state of Arkansas; the same were issued by the Companies and upon the payment of the stipulated premiums therefor, were delivered to the insured in the state of Arkansas. These contracts of insurance were for various amounts, not material here.

The insured was deceased more than two years after the issuance of said contracts of insurance and the face amount, provided therein, was paid by the Companies to the designated Beneficiaries without contest. The Companies denied liability on the double indemnity provision contained in each of said contracts of insurance for the reason that the insured met his death by self-destruction, a risk specifically exempted from the provisions in the contracts of insurance relating to double indemnity and excepted in the incontestable clause in all the contracts of insurance included in Group "A" herein. Double indemnity for self-destruction was excepted in the Double Indemnity clause but not excepted or mentioned in the Incontestable clause in the contracts referred to as Group "B".

The Beneficiaries contend that more than two years having elapsed since the date of issuance of said contracts the Companies are precluded from setting up any defense of suicide by reason of the incontestable clauses contained in each of the contracts.

The applicable provisions of the contracts, designated herein as Group "A" are as follows:

After providing for payment of face amount of the contract of insurance upon due proof of death of insured, it provides for double the face amount of the contract "if such death resulted from accident as defined under 'Double Indemnity' and subject to the provisions therein set forth."

Under "Double Indemnity" (set forth in bold letters) the contracts provide: " * * * that such double indemnity shall not be payable if insured's death resulted from self-destruction, whether sane or insane. * * *"

Under sub-head "Contract" it is provided: " * * * all benefits under this policy are payable at the Home Office of the Company in the city and state of New York and the surrender of the policy will be required in any settlement thereof."

Under the sub-head "Incontestability" it is further provided: "This policy shall be incontestable after two years from its date of issue except for non-payment of premium and except as to provisions and conditions relating to disability and double indemnity benefits."

One of the contracts of insurance issued by the Mutual Life Insurance Company of New York and considered under Group "A" under sub-head "Incontestability" provides: "Except for non-payment of premiums and except for the restrictions and provisions applying to the double indemnity and disability benefits as provided in Section 1 and 3, respectively, this policy shall be incontestable after one year of its date of issue unless the insured dies in such year, in which event it shall be incontestable after two years from its date of issue."

Section 1 referred to in said clause is the clause providing for double indemnity and specifically provides: " * * * that double indemnity shall not be payable if death resulted from self-destruction whether sane or insane. * * *"

■ All of the contracts herein specifically provide for the payment of premiums at the Home Office and for payment of the benefits accruing under said contracts of insurance at the Home Office. We, therefore, conclude that the place of performance is at the Home Office in the state of New York. Head v. New York Life Insurance Company, 10 Cir., 43 F.2d 517. The application having been made, premi-

ums paid thereon and the contracts delivered in the state of Arkansas, the contracts are Arkansas contracts and governed by the law of the place of making, lex loci contractus. The Courts having said in effect that the obligation of a contract undoubtedly depends upon the law of the place under which it is made, and that the place of delivery or where the last act is performed will constitute the place of the making of the contracts.

■ The suits were instituted and prosecuted in the state of Oklahoma; this Court having jurisdiction of the parties; therefore, the contracts were made in the state of Arkansas, to be performed in the state of New York and the jurisdiction of this Court is invoked to enforce the rights and remedies of the parties. Under the well established rule, "the performance of a contract is governed by the law where it is to be performed and the remedy by the law where suit is brought, all matters which bear upon the execution, interpretation, and validity of the contract are determined by the laws of the place where it is made." Brown v. Ford Motor Co., 10 Cir., 48 F.2d 732, 734; Scudder v. Union National Bank, 91 U.S. 406, 23 L.Ed. 245; Northwestern Mutual Life Insurance Company v. McCue, 223 U.S. 234, 32 S. Ct. 220, 56 L.Ed. 419, 38 L.R.A.,N.S., 57; Mutual Life Insurance Company of New York v. Hill, 193 U.S. 551, 24 S.Ct. 538, 48 L.Ed. 788; Federal Surety Company v. Minneapolis Steel and Machinery Company, 8 Cir., 17 F.2d 242, and Equitable Life Assurance Society v. Clements, 140 U.S. 226, 11 S.Ct. 822, 35 L.Ed. 497. Restatement of the Law, Sections 332 and 358 in Conflict of Laws.

■ Recognizing the rule now well established by Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the applicable decisions of the state courts are controlling and binding upon this Court but we are not aided by the rule in determining the important question here except insofar as we must follow the rule of every state where it is applicable. In this connection there is some question as to the meaning of the footnote #2 by Justice Reed in the case of John G. Ruhlin et al. v. New York Life Insurance Company, 304 U.S. 202, 58 S.Ct. 860, 862, 82 L.Ed. 1290, wherein he stated: "Under the general doctrine the interpretation of an insurance contract depends on the law of the

862

place where the policy is delivered. Mutual Life Insurance Co. v. Johnson, 293 U. S. 335, at page 339, 55 S.Ct. 154, 156, 79 L.Ed. 398. We do not now determine which principle must be enforced if the Pennsylvania courts follow a different conflict of laws rule." In that case the Pennsylvania court was the court of the Forum.

■ "Obligations, in respect to the mode of their solemnization, are subject to the rule locus regit actum; in respect to their interpretation, to the lex loci contractus; in respect to the mode of their performance, to the law of the place of their performance. But the lex fori determines when and how such laws, when foreign, are to be adopted, and, ·in all cases not specified above, supplies the applicatory law." Wheaton on Conflict of Laws, section 401; cited in Scudder v. Union National Bank, supra. Therefore, in determining the law of what state shall govern the interpretation of these contracts we must determine the application of the law of the forum.

It is urged by the beneficiaries that the contracts having been made under the laws of the state of Arkansas this Court, as the Forum of the action, under the rule of conflict of laws, shall apply the law of the state of Arkansas, under which the beneficiaries are entitled to recover the double indemnity provided in the contracts of insurance. The companies contend that, under the rule of conflict of laws, this Court, as the Forum of the action, shall look to the law of the Forum to determine which state the contracts will be referred to for interpretation, and urge that the conflict of laws rule in this instance is governed by Title 15 Oklahoma Statutes Annotated, Section 162, Section 9470, Oklahoma Statutes 1931, as follows: "A contract is to be interpreted according to the law and usage of the place of where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."

The companies further urge that the contracts herein specifically and definitely provide a place of performance and that this court should follow the statutory mandate of the Forum in determining the law of what state shall apply in the interpretation of the contracts. No case has been brought to the attention of the Court wherein this identical state of facts obtained. In the case of Ostroff v. New York Life Insurance Company, D.C., 23 F.Supp. 724, 726, where an identical statute as the one invoked here, that is Title 15 Oklahoma Statutes Annotated § 162, the Court applied this statute to a contract of insurance made in the state of California but which indicated the place of ·performance to be the state of New York, as in the instant case. The Court there said: "The payment of the premiums, which is the consideration for the policy, and the payment of the benefits, which is the. obligation to be performed by the defendant upon the happening of certain contingencies, constitute the performance of the contract. As under the agreement of parties, this performance is to take place in the State of New York, the law of that state must govern." Citing cases.

A situation similar would obtain if these suits had been brought in the state of Arkansas, lex loci contractus, provided Arkansas had a statute similar to that of Oklahoma and California, supra, but the Forum of these actions is Oklahoma.

■ The law of the Forum, or remedy, therefore, is governed by the applicable statutes and decisions of the Forum which in this instance provides plainly that the contract is to be interpreted according to the laws and usage of the place where it is to be performed because the place of performance is specifically indicated. In Restatement of Law on Conflict of Laws, Section 332, in sub-section "c" on Duty And Performance Thereof, it is stated: "All questions which may arise in the interpretation or performance of a contract are logically implicit in the will of the parties as expressed in their contract." By statute, supra, the law of the Forum (remedy) decrees that the law of the place of contract, lex loci contractus, must yield to the law of the place of performance, although it may be contrary to the established principles of common law and usage. Therefore, this Court is of the opinion that these. contracts of insurance must be interpreted in accordance with the laws of the state of New York.

■ It is well established that under the decisions of the courts of New York an insurance company is not prevented, by the incontestable clause of the contracts of insurance, from proving that the insured's death was not one contemplated, covered or a risk assumed under the con-

ditions and provisions of the double indemnity clauses of the contracts of insurance. This rule is so well established in the case of Metropolitan Life Ins. Co. v. Conway, 252 N.Y. 449, 169 N.E. 642, in an opinion by Justice Cardozo that all room for doubt and argument are swept aside. The Court therein, in holding that a proposed rider for life insurance policy providing that risk would not be assumed for death as result of service or flight in aircraft, except as fare-paying passenger, was not inconsistent with the insurance law of the state providing for incontestability after two years, said: "It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken." Citing Sanders v. Jefferson Standard Life Ins. Co., 5 Cir., 10 F.2d 143; Flannagan v. Provident Life & Accident Ins. Co., 4 Cir., 22 F.2d 136; Scarborough v. American National Ins. Co., 171 N.C. 353, 88 S.E. 482, Ann. Cas.1917D, 1181, L.R.A.1918A, 896, and many other cases. The Court further said: "The meaning of the statute in that regard is not changed by its exceptions. [Meaning the exceptions in the policy.] A contest is prohibited in respect of the validity of a policy, 'except for nonpayment of premiums and except for violation of the conditions of the policy relating to military or naval service in time of war.' * * * Here again we must distinguish between a denial of coverage and a defense of invalidity. * * * No such result follows where there is a mere restriction as to coverage. The policy is still valid in respect of risks assumed."

The same principle was applied by our own Circuit Court of Appeals in the case of Head v. New York Life Ins. Co., supra, wherein Judge Phillips stated: "The 'incontestable' provision in section 6731, supra, 36 Okl.St.Ann. § 218, is not a mandate as to coverage nor a definition of the hazards to be borne by the insurer. It provides rather that, after the expiration of the two year period, the policy, within the limits of the coverage, shall stand unaffected by any defense that it was invalid in its inception or thereafter became invalid by reason of a condition broken. * * * Here, again, the distinction must be made between limitation on the coverage and limitation on a defense of invalidity." [43 F.2d 519.]

In the instant case as has heretofore been recited, the contracts of insurance provided for payment of double the face of the policy if such death resulted from accident as defined under the double indemnity clause, which specifically provided that double indemnity should not be payable if insured's death resulted from self-destruction, whether sane or insane. In each of the contracts classified herein under Class "A" the provisions and conditions relating to disability and double indemnity benefits were specifically referred to and excepted from the incontestable clause. In each of the contracts classified herein under Group "B" the contracts contain the same provisions and conditions relating to disability and double indemnity benefits in the double indemnity clause but was not specifically referred to and excepted from the incontestable clause.

Giving full effect to the well established rule of law which construes a contract of insurance strictly against the companies and giving liberal construction to the application of the incontestable clause in determining the liability of the companies, yet we cannot read into a contract a liability or a risk which, by plain terms and conditions of the same the companies never intended to assume and specifically stated by the terms of the policy that they did not assume. To read otherwise would do violence to the rights of the parties to the contract under the permissible limits of the laws and the constitution. The Court, therefore, concludes that accepting the view that these contracts are to be construed in accordance with the laws of the state of New York that the beneficiaries cannot prevail because they ask judgment for that which their contract did not cover and they are therefore without remedy, as to contracts classified as Group "A" and "B".

In the next instance accepting the view so earnestly urged by the beneficiaries that the contracts are Arkansas contracts and the rights of the parties should be determined by the application of the laws of that state, they cannot prevail.

The Court has been unable to find any authority from the cases cited by counsel which gives support to the rule urged here to the effect that the companies herein are precluded from defending against loss un-

der a contract of insurance wherein death by suicide or self-destruction was specifically referred to and exempted by the terms and conditions of both the double indemnity and incontestable clauses of the contracts of insurance and which, by the plain terms and provisions of the contract, the companies specifically stated that they would not be liable for double indemnity where death resulted from suicide or self-destruction, whether sane or insane at any time, either before or after the expiration of the incontestable period.

In this connection our attention is called, as authority for the contention of the beneficiaries to the Missouri State Life Insurance Company v. Cranford, 161 Ark. 602, 257 S.W. 66, 67, 31 A.L.R. 93, wherein it was held "that a life insurance policy containing a provision that it shall be incontestable after a specified time cannot be contested by the insurer on any ground not excepted in that provision." The court there said in substance: We are of the opinion that in construing the clause in the light most favorable to the insured no contest was made in the case until the insurance company filed an answer in which it averred that the contract should be set aside on the ground of fraud on the part of the insured in procuring it. In that case the insured died before the expiration of the contestable period but the company did not file suit or take any steps to contest their liability on the policy until after the expiration of the incontestable period. In that case the court merely held that the incontestable clause precluded the company from denying liability because they did not avail themselves of that right within that period provided in which a contest could be made. The opinion was by a divided court and was followed by Standard Life Insurance Company v. Robbs, 177 Ark. 275, 6 S.W.2d 520. Fore v. New York Life Insurance Company, 180 Ark. 536, 22 S.W.2d 401, 67 A.L.R. 1358, in which it was stated on authority of the Cranford case that an insurance company's policy containing the provision that it shall be incontestable after a specified time cannot be contested by the insurer on any ground not excepted by that provision.

It will be noted that the rule announced in each of these cases is prefaced by the absence of the exception in the incontestable clause which appears in each of the contracts of insurance classified herein as Group "A" and although no positive statement is made that the rule would be different, plain logic and reasoning convinces us that if the policies therein involved had contained an exception in the incontestable clause the rule would have been different.

The effect therefore of the application of this rule to the facts here would mean that if the companies herein had assumed the risk of death by suicide under the terms of the contract it could not here raise it as a defense because whatever risk was assumed became incontestable after two years and in determining the question of what risk was assumed we must look to the provisions of the incontestable clause for the exceptions to the coverage. As I understand the announced rule in the Arkansas cases there is nothing in that doctrine which leads us to the conclusion that the companies would be precluded from raising the defense to the risk which it plainly excepted from the coverage and made plain and distinct by the incontestable clause.

Giving liberal effect to these decisions I cannot go further in the application of this rule. Furthermore, the condition we find here is a limitation on the risk assumed and is not a provision for forfeiture which rendered the contract invalid, as announced by Northwestern Mutual Life Insurance Company v. Johnson, 254 U.S. 96, 41 S.Ct. 47, 65 L.Ed. 155, or a contract sought to be declared invalid in its inception by fraud in its procurement where the extent of coverage was not involved as announced in numerous decisions of the Federal Courts urged as controlling here by the beneficiaries. New York Life Insurance Company v. Kaufman, 9 Cir., 78 F.2d 398, Stroehmann v. Mutual Life Insurance Company, 300 U.S. 435, 57 S.Ct. 607, 81 L.Ed. 732; Ness v. Mutual Life Insurance Company of New York, 4 Cir., 70 F.2d 59. Mutual Life Insurance Company v. Cohen, 179 U.S. 262, 21 S.Ct. 106, 45 L.Ed. 181.

Liability for the face amount of the policies has been paid. The question for this Court to decide is not whether the contract is valid by its terms but whether the terms of the policies were intended in the first instance to cover double indemnity for self-destruction or suicide. The Court concludes that double indemnity for self-destruction or suicide was not covered by the contracts and could not be so construed

under any decision of any court either New York or Arkansas in respect to these contracts classified herein as Group "A".

■ With reference to those contracts classified herein under Group "B" wherein specific references to the conditions and provisions of double indemnity in the incontestable clauses were omitted there may be some doubt under the rule announced by the Arkansas decisions but it is not necessary to determine that question here because of the Court's decision here in applying the laws of the state of New York in the interpretation of all the contracts.

■ The remaining question not seriously urged is the correctness of the Court's judgment in directing a verdict. The court is of the opinion that the evidence is so clear and convincing that it can be said that all reasonable men would draw the conclusion that the death in this instance was suicide and thereby becomes a question of law for this court to decide, notwithstanding the presumption against suicide. See Couch Encyclopedia on Insurance, Section 1262r.

The Court therefore concludes that the judgment of this Court in directing a verdict for the companies was correct and parties are directed to submit findings of fact and conclusions of law consistent with the views herein expressed.