SELMA SIMPSON, Appellant, *v.* PHOENIX MUTUAL INSURANCE COMPANY, Respondent.

First Department, June 25, 1968.

*Joseph L. Fishman* of counsel (*Moses & Singer,* attorneys), for appellant.

*Edward T. Post* of counsel (*Rowland H. Long* with him on the brief; *Friend, Kinnan, Post & Friend,* attorneys), for respondent.

EAGER, J. P. Plaintiff appeals from an order denying her motion for summary judgment. The action was brought by her, as the named beneficiary of a deceased certificate holder, to recover life insurance and accidental death benefits allegedly payable under the terms of a group life insurance policy.

The plaintiff alleges that her husband, a New York lawyer, was insured under a group policy issued by the defendant as of January 1, 1963 to cover the employees of several funeral homes and cemetery associations, including the Lebanon Ceme-

tery Association of Queens, Inc. Concededly, the decedent (Simpson) was an officer-employee of such association, to wit, its secretary, at the time of the issuance of the policy, and continued to be so employed until the time of his death on June 17, 1964 when, as a victim of a robbery, he was shot and killed at his apartment building.

The defendant denies coverage upon the ground that Simpson was not an " eligible employee " within the terms of the policy. Plaintiff, however, contends that, irrespective of the limiting terms of the group policy, the defendant agreed to insure Simpson as an employee of Lebanon and issued to him a certificate (of insurance) evidencing such insurance. Furthermore, plaintiff contends that an incontestability clause in the policy bars defendant's defense that Simpson was not eligible for the insurance evidenced by the certificate issued to him.

It appears that prior to the issuance of the subject group insurance policy, the employees of certain cemetery associations, including Lebanon, were covered by a policy issued by the Prudential Insurance Company. There were negotiations with the defendant for the taking over of the insurance and, in this connection, there is evidence that the defendant was furnished with a list of officers and employees of the several cemetery associations covered by the existing group policy, including Simpson as secretary of Lebanon. A preliminary written application was made to the defendant for the issuance of the insurance. This application set forth the total number of employees, including Simpson, to be covered by the insurance. In connection with the application, the employees to be covered were required to fill out and sign enrollment cards. Simpson did prepare and subscribe such a card which was submitted to the defendant together with the enrollment cards for the other employees to be insured.

In September 1962, defendant delivered its group policy effective as of August 1, 1962, covering employees of Lebanon and of other specified associations, but this policy was replaced by an industry-wide group policy issued effective January 1, 1963. Pursuant to the latter policy, the defendant delivered insurance certificates in the name of each of the insured employees of Lebanon and the other participating employers. The certificate delivered to Simpson purported to certify that the defendant had issued and delivered the particular group policy covering employees of Lebanon and set forth a table indicating the amount of life insurance and accidental death benefits provided for Simpson.

Included within the pertinent provisions set forth in the certificate and contained in the group policy, were those limiting

the coverage of the insurance to "eligible employees" and, in this connection, providing: "The term 'employee' as used herein shall mean each of the Employer Member's full-time employees regularly working at least 30 hours per week at the Employer Member's usual place of business".

The plaintiff concedes that her husband (Simpson) at no time devoted "at least 30 hours per week at [Lebanon's] usual place of business". It is clear, however, that the parties, at the time of the issuance of the group policy, assumed that Simpson, as an officer-employee of Lebanon, was eligible for the insurance provided by the policy. Implicit in the filing of the enrollment card by him and the submission of the same by his employer, Lebanon, to the defendant, was the representation by Simpson and Lebanon that he was so eligible. On this basis, the defendant insurer issued to Simpson the certificate of insurance in the usual form and accepted premiums on the basis of insurance as provided therein.

Although the insurance certificate stated that it was not a contract and referred to the group policy for the determination of the holder's rights, the delivery of the certificate to Simpson had the effect of conferring upon him the benefit of applicable provisions of the group policy. Included within such provisions was an incontestability clause as follows: "INCONTESTABILITY: The validity of this policy shall not be contested, except for nonpayment of premiums, after it has been in force for two years from the date of issue. No statement made by any insured employee relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such employee's lifetime nor unless such statement is contained in a written instrument signed by him. No written statement made by any insured employee shall be used in any contest unless a copy of the instrument containing the statement is or has been furnished to such employee or to his beneficiary."

Certainly, the incontestable clause, as a provision specified by the Legislature to be inserted in group life insurance policies, is a provision required for the protection of the individual certificate holders. (See Insurance Law, § 161.) It is the legislative objective to obtain for policy holders the benefit of incontestability clauses favorable to them. (See *Allick* v. *Columbian Protective Assn.*, 269 App. Div. 281, 286, affd. 295 N. Y. 603.)

The certificate issued by defendant to Simpson, in accordance with a table therein referred to, stated that the insurance car-

ried for him under the group policy was $20,000 life insurance and $20,000 accidental death benefit. The premiums for such insurance were paid to defendant and accepted by it on the basis that Simpson was an "eligible employee". Upwards of two years did elapse prior to the contesting by defendant of the validity or efficacy of such insurance for Simpson. (See *Kocak* v. *Metropolitan Life Ins. Co.*, 263 N. Y. 518; *Killian* v. *Metropolitan Life Ins. Co.*, 251 N. Y. 44.) Therefore, the proper application of the incontestability clause bars the defendant from defending this action by the beneficiary of such insurance to recover the amount thereof (*Eagon* v. *Union Labor Life Ins. Co.*, 2 A D 2d 843, affd. 3 N Y 2d 785).

We conclude that the *Eagon* decision is controlling. Firstly, it is noted that Mr. Justice VALENTE's dissent in this court was directed solely to the contention that the incontestable clause did not apply. It also appears that the brief of the defendant in the Court of Appeals takes such position, arguing that the incontestability clause was inapplicable in that a question of coverage and not of validity of the insurance was involved. Inasmuch as the majority of this court rendered no opinion and the Court of Appeals affirmed without opinion, it reasonably follows that both courts considered and rejected the contention and argument presented by Mr. Justice VALENTE's dissent. Secondly, the *Eagon* decision may not properly be distinguished on the ground that this court and the Court of Appeals may have affirmed the plaintiff's judgment therein on the basis of waiver or estoppel independent of that arising by virtue of the terms of the incontestable clause. It may not be assumed that the courts affirmed the *Eagon* recovery on such a basis for it is settled law that waiver or estoppel may not be invoked to create insurance coverage where none exists under the policy as written (see Insurance Law, § 142; *Draper* v. *Oswego Co. Fire Relief Assn.*, 190 N. Y. 12; *Miller* v. *American Eagle Fire Ins. Co.*, 253 N. Y. 64; *Horrmann* v. *Prudential Ins. Co.*, 192 Misc. 758, 763; Ann. 1 ALR 3d 1139).

Furthermore, as a matter of fact, the contest here is not, as defendant argues, a challenge directed solely as to coverage under the group policy (cf. *Matter of Metropolitan Life Ins. Co.* v. *Conway*, 252 N. Y. 449). This contest with the beneficiary of a certificate holder, consisting of an attack against the status of such holder as a qualified insured, is in effect a contest directed to the validity of the insurance which is represented by such certificate and for which premiums were paid and accepted. The defendant is asserting that Simpson never had any rights; that there never was a valid contract of insurance

as to him; and that under no circumstances would the defendant be obligated to him or his beneficiary. Therefore, the incontestability clause, in light of its wording and purpose, should apply. This is the holding of *Eagon* (*supra*).

To hold that the incontestability clause in the group policy is inapplicable under the circumstances here would have the effect of depriving individual certificate holders of the proper benefit of provisions prescribed for their protection. If defendant's contentions were accepted, certificate holders and their beneficiaries relying in good faith upon the existence and validity of insurance under a group policy would have no protection against a defense of lack of coverage; notwithstanding the payment of premiums for many years for insurance under such a policy for the benefit of a particular certificate holder, the insurance company could at any time claim lack of coverage and repudiate the insurance to the serious prejudice of the holder or his beneficiary. Such a result would certainly tend to thwart the legislative intent in providing for the incontestability clause in group policies. The holding in *Eagon* v. *Union Labor Life Ins. Co.* (*supra*) is directed against such a result, and that holding should be followed here. (Cf., however, *Fisher* v. *United States Life Ins. Co.*, 249 F. 2d 879.)

The order entered July 25, 1967, denying plaintiff's motion for summary judgment, should be reversed on the law, with costs and disbursements to plaintiff; the plaintiff's motion should be granted; and plaintiff should recover judgment against defendant in the sum of $40,000, with interest and taxable costs.

STEUER, J. (dissenting). I dissent.

The clearly reasoned majority opinion rests squarely on the proposition that the Court of Appeals in deciding *Eagon* v. *Union Labor Life Ins. Co.* (2 A D 2d 843) by an affirmance without opinion (3 N Y 2d 785) flatly rejected the arguments of the dissenting opinion and thereby fixed the law of the State. If I held to that view I would perforce have to agree with the majority. While there are some facts in *Eagon* which might have warranted a determination on the basis of estoppel, it must be admitted that there is no internal evidence that the high court rested on them. However, I have difficulty in believing that that court would have overruled the prior holdings in this State, departed from the holdings in other jurisdictions and reached a conclusion which appears to be at variance with the logic of the situation without so stating.*

---

* This same conclusion was reached in regard to *Eagon* by the United States Court of Appeals for the Fourth Circuit in *Fisher* (*infra*, p. 884).

To put the question in its baldest terms: Does an incontestable clause in a group insurance policy after the expiration of the period require the company to pay one who by the terms of the policy is ineligible but whose name has been included in the list of those insured? What the insurer contracts to do is to insure certain employees of certain employers — the employers named in the policy and those of their employees who spend at least 30 hours a week in the service of the employers. For others, no coverage is contracted for or provided. It has always been the law of this State that the incontestable clause cannot serve to extend the risk or the coverage contracted in the policy (*Matter of Metropolitan Life Ins. Co.* v. *Conway*, 252 N. Y. 449). The court (CARDOZO, Ch. J.) pointed out that while an incontestable clause vitiates a forfeiting condition it will not prevail against a refusal to assume the risk (*supra*, p. 453).

That what is involved here is an extension of the risk there can be little doubt (*Fisher* v. *United States Life Ins. Co. in City of N. Y.*, 249 F. 2d 879). Similar conclusions on both the fact that what is involved in this situation is an extension of the risk and is hence not affected by the incontestable clause have been reached in Michigan (*Rasmussen* v. *Equitable Life Assur. Soc. of U. S.*, 293 Mich. 482), Ohio (*Ætna Life Ins. Co.* v. *Hooper*, 19 Ohio Law Abst. 123), Georgia (*Washington Nat. Ins. Co.* v. *Burch*, 270 F. 2d 300), and California (cf. *John Hancock Mut. Life Ins. Co.* v. *Dorman*, 108 F. 2d 220). Our attention has not been called to any case to the contrary in any jurisdiction, unless *Eagon* be so considered.

Unfortunately, difficulty arises from the attempt to apply the incontestable clause designed for individual policies to a group policy. In the former case the insurer deals vis-a-vis an individual. The company accepts him as a risk and after the period of incontestability arrives it may not complain that he was not as good a risk as he represented himself to be. In the case of a group policy the situation is entirely different. The insurance company does not deal with the respective beneficiaries, it does not accept them as risks, nor does it collect premiums from them. It deals with the entity applying for the insurance for the group; it contracts to insure those members of the group who come within the terms of the policy. It must rely on the entity to supply the names of the individuals but it says in effect only those individuals who come within the qualifications will be insured. As a consequence it is universally recognized that a certificate given by the insurer to an employee stating that he is included in the policy has no contractual or insuring effect (*Boseman* v. *Insurance Co.*, 301 U. S. 196; *Carp* v. *California-Western States*

*Life Ins. Co.,* 252 F. 2d 337). Thereafter any inequity resulting is the fault of the entity and the insurer cannot be compelled to accept, through being misled, a risk it did not contract to undertake.

The order of Special Term should be affirmed.

CAPOZZOLI, McGIVERN and RABIN, JJ., concur with EAGER, J. P.; STEUER, J., dissents in opinion.

Order entered on July 25, 1967, reversed, on the law, with $50 costs and disbursements to appellant, plaintiff's motion for summary judgment granted, and judgment rendered in favor of the plaintiff and against defendant in the sum of $40,000 with interest and taxable costs.