442 P.2d 876

NATIONAL PRODUCERS LIFE INSURANCE COMPANY, an Arizona corporation, Appellant,

v.

Sadie S. ROGERS, a married woman acting in her sole and separate right, Appellee.

No. 2 CA–CIV 511.

Court of Appeals of Arizona.

July 2, 1968.

Rehearing Denied July 22, 1968.
Review Denied Sept. 26, 1968.

Lewis, Roca, Beauchamp & Linton, by Terry D. Oehler, Phoenix, for appellant.

Boyle, Bilby, Thompson & Shoenhair, by Michael A. Lacagnina, Tucson, for appellee.

MOLLOY, Judge.

In this appeal, we are called upon to consider a contention that an "incontestability clause" in a life insurance contract precludes the insurer from asserting the defense that death by suicide was an excepted risk under the terms of the policy.

George Z. Rogers, Jr., the insured, died on or about November 17, 1966, as a result of an intentionally inflicted gunshot wound. The insurance contract in question was issued to the insured by defendant's predecessor in interest, effective January 1, 1947. The parties agree that defendant's predecessor was a benefit insurance corporation subject to the various provisions of the Benefit Insurance Corporation Law of 1943, Arizona Code Annotated, 1952 Cumulative Supplement, § 61–1001 et seq.

Under the heading "RESTRICTIONS AND EXCEPTIONS," the insurance policy provided:

"This policy does not cover: Suicide, or death occurring as a result of alcoholism of the Insured; Death resulting from army or naval service in time of war, or death occurring by aeronautics unless a fare-paying passenger on a definitely established airline between two fixed points; Death caused by any intentional act of the beneficiary or beneficiaries."

Under the heading "GENERAL PROVISIONS," the policy provided:

"INCONTESTABILITY—This policy shall become incontestable after two years from its date or the date of the last reinstatement except for non-payment of premiums or assessments or for fraud."

In all respects material here, this incontestability clause was in compliance with the requirements of the Benefit Insurance Corporation Law in effect at the time of the issuance of this policy.[1]

Following the death of the insured, Sadie Rogers, the beneficiary under the policy, commenced this action for the proceeds payable thereunder. After the close of the pleadings, both parties moved for summary judgment. Defendant took the position that death by suicide was an excepted risk under the plain terms of the policy, and that accordingly no benefits were payable.

Plaintiff contended that the statute requiring inclusion of the incontestable clause was controlling, under the decision of our Supreme Court in National Life & Casualty Ins. Co. v. Blankenbiller, 89 Ariz. 253, 360 P.2d 1030 (1961), and had the effect of preventing the insurer from contesting its liability under the terms of the policy. The trial judge, relying heavily upon the *Blankenbiller* decision, granted plaintiff's motion and entered summary judgment for plaintiff and against defendant.

We find ourselves unable to agree with the lower court in its determination that the *Blankenbiller* case is decisive of this case and in its ultimate conclusion that plaintiff is entitled to recover under the insurance contract here in suit.

The *Blankenbiller* case is like this case in that both involved an insurance contract issued pursuant to the Benefit Insurance Corporation Law of 1943. The policy in the *Blankenbiller* case, however, contained the following incontestability clause:

" 'Incontestability: This Policy shall be incontestable after it has been in force during the lifetime of the Insured for a period of two years from its date of issue or date of last reinstatement except for nonpayment of premiums; provided, however, that if the death or disability of the Insured results directly or indirectly or is contributed to wholly or in part from any disease or disability which existed prior to the issuance of this Policy, then the amount payable hereunder on account of such death or disability shall be limited to the amount of premiums paid hereunder on account of such Insured.' "

89 Ariz. at 255, 360 P.2d at 1031.

The insured in the *Blankenbiller* case had died within two years after the policy had been reinstated on the basis of a new application by the insured which represented that the insured was in good and vigor-

---

1. See ACA 1939, 1952 Cum.Supp. § 61–1017(a) (3). The words " * * * or for fraud" appearing at the end of the clause in the policy in this case are not included in the statute but their addition is not material to the issues here.

ous health and free from disease, ailment or disability. Those representations were actually misrepresentations, in that both the insured and the claimant-beneficiary Blankenbiller knew that the insured had suffered from hypertension and uremia and various other serious related ailments, for some two years prior to his application for reinstatement. On the basis of those facts and in reliance upon the proviso in the incontestability clause set forth above, the insurer in *Blankenbiller* tendered to the beneficiary only the amount of premiums paid on the policy and denied any further liability.

The Supreme Court held that the claimant in *Blankenbiller* was entitled to all of the proceeds of the policy. In arriving at its decision, the Court, at 89 Ariz. 255–256, 360 P.2d 1032, took note of a passage from Williston on Contracts § 811, at 2280 (Rev.Ed.), reading as follows:

> " 'In determining whether the incontestable clause is applicable to a given situation a distinction should be noted between matters of defense going to the invalidity of the whole policy on the one hand, and on the other hand provisions relating to excepted risks. * * *' "

The Court then went on to state, at 89 Ariz. 256, 360 P.2d 1032:

> "*This Court recognizes that the incontestability clause relates to the validity of the contract*, and does not deny the company the right to controvert the amount of its liability. New York Life Ins. Co. v. Bennion, 10 Cir., 158 F.2d 260, 265.
>
> "The nearly unanimous decisions of the courts are to the effect that the company is given, under the incontestability clause, a reasonable period of time to check into and to *ascertain the truth of the declarations made by the applicant* and to take such action as will protect its rights. If it fails to do so then this defense is barred. [Citing authorities.]
>
> "*By alleging that the death resulted from a prior illness and that necessarily the statements made on the application*

*are false, the defendant raised the issue of fraud over two years after the last reinstatement contrary to the incontestability statute. * * *

> "The majority rule is that every *exception to incontestability* not expressed in the statute itself is specifically barred as a defense to the policy after the expiration of the incontestability period. [Citing authorities] The insurer cannot therefore make the incontestability clause more onerous to the insured than the statute provides or include *exceptions to incontestability* other than those permitted by the statute.
>
> "The courts have gone further and stated that the defense of no obligation assumed because of the *insured's health being unsound on the date of the issuance of the policy* is barred by the incontestability clause. [Citing authorities]." (Emphasis ours.)

Appellant here also calls our attention to the following concession appearing at page 8 of the appellee-claimant Blankenbiller's brief which was before the Supreme Court in the *Blankenbiller* case:

> "Appellant insurance company might possibly have excluded this risk (as it now contends) had it done so clearly and unambiguously in a separate section in its policy devoted to exclusion of risks. Appellant has not done this but has inserted an ambiguous phrase in a sentence labeled 'incontestability'. This sentence conflicts with the statute regulating incontestability."

From all of the foregoing, we think that it is clear that the Court in its *Blankenbiller* decision did not intend to go beyond the particular facts and policy provisions in the case before it and give the statute prescribing the incontestability clause a construction which would have the effect of nullifying clearly stated exceptions to the risk assumed by the insurer. The insured's health was a condition existing at the time the insurance contract in the *Blankenbiller* case was reissued. Even under the insurer's theory, the extent of coverage and

noncoverage and any "fraud" of the insured would necessarily be determined as of that date. The insurance company could, if it chose, conduct an investigation to ascertain the state of the insured's health, and to protect its rights within the statutory period of contestability. Had the Court reached a contrary result in *Blankenbiller*, it would be open to any insurer with similar language written into its policies to litigate, after death, and after the statutory period of incontestability, the difficult factual, medical and legal question of causal or contributory preexisting disease, rendering uncertain the rights of many insureds and their beneficiaries.

Neither the language of *Blankenbiller* nor the holdings of the authorities cited therein lead to the conclusion that a life insurer may not limit its risk to exclude suicidal death by appropriate plain language. *Blankenbiller's* reference to the case of New York Life Ins. Co. v. Bennion, 158 F.2d 260 (10th Cir. 1946), indicates a recognition that an insurer may so limit its risk. The policy before the federal court of appeals in that case excluded coverage for death resulting from war or any act incident thereto. Applying Virginia law, the court held that an incontestability statute did not preclude the insurer's defense that the risk was not assumed in the coverage. See 158 F.2d at 265–266.

Turning to cases outside of Arizona, we find it stated, generally, without detailed qualification as to particular provisions and circumstances, that there is a conflict of authority as to whether an insurer may rely upon a clause excluding coverage for suicide notwithstanding the incontestability clause. See Annot., Suicide clause in policy of life or accident insurance as affected by incontestability clause, 55 A.L.R. 549, supplemented at 67 A.L.R. 1364; and 9 Couch on Insurance 2d §§ 40:64–40:68, at 689–694.

On closer analysis, we find that the authorities which hold that an incontestability clause bars a defense of suicide after the end of the contestable period are relatively few in number and often subject to criticism or qualification.

The Arkansas court adopted the view in Standard Life Ins. Co. v. Robbs, 177 Ark. 275, 6 S.W.2d 520 (1928), that an answer filed by an insurer after the end of the contestable period could not validly assert the defense of suicide. While a bare majority reaffirmed the *Robbs* decision in the later case of Fore v. New York Life Ins. Co., 180 Ark. 536, 22 S.W.2d 401, 67 A.L.R. 1358 (1929), Justice Smith, dissenting for himself and two other justices, termed the *Robbs* decision "* * * unsound in logic and contrary to the overwhelming weight of authority * * *." 22 S.W.2d 403, 68 A.L.R. 1361. And see Hearin v. Standard Life Ins. Co., 8 F.2d 202 (D.C. E.D.Ark.1925), which reached a conclusion contrary to the *Robbs* decision on essentially the same facts

Early decisions in Alabama, Kansas and Texas against the insurer's position have been overruled or superseded by later cases in the same jurisdictions upholding the defense of excepted risk. Compare Mutual Life Ins. Co. of New York v. Lovejoy, 201 Ala. 337, 78 So. 299, L.R.A.1918D, 860 (1918), with Moore v. Bankers' Credit Life Ins. Co., 223 Ala. 373, 136 So. 798 (1931); Supreme Court of Honor v. Updegraff, 68 Kan. 474, 75 P. 477 (1904), with Myers v. Liberty Life Ins. Co., 124 Kan. 191, 257 P. 933, 55 A.L.R. 542 (1927); and Mutual Reserve Fund Life Ass'n v. Payne, 32 S. W. 1063 (Tex.Civ.App.1895), with Howard v. Missouri State Life Ins. Co., 289 S.W. 114 (Tex.Civ.App.1926), and Southwestern Life Ins. Co. v. Houston, 121 S.W.2d 619 (Tex.Civ.App.1938, error ref.).

We think that the clear weight of the better-reasoned authorities is in accord with the holding in Wright v. Philadelphia Life Ins. Co., 25 F.2d 514, 515 (D.C.E.D. S.C.1927), that a provision in a life insurance contract excluding coverage for death by suicide:

"* * * is entirely distinct from the incontestable clause, is consistent with it, and the one in no way contradicts the

other. The insurance company in this case is not denying in any way the validity of the contract, and therefore is not contesting the policy. Indeed, it stands upon the contract, affirms its validity, and says that, by the terms of the contract itself, the risk was not assumed."

See Mack v. Connecticut General Life Ins. Co. of Hartford, 12 F.2d 416 (8th Cir. 1926); Howe v. New York Life Ins. Co., 2 F.Supp. 242 (D.C.S.D.Calif.1931); Bankers Life Co. of Des Moines, Iowa v. Horton, 189 Okl. 591, 118 P.2d 402 (1941); Stean v. Occidental Life Ins. Co., 24 N.M. 346, 171 P. 786 (1918); Scales v. Jefferson Standard Life Ins. Co., 155 Tenn. 412, 295 S.W. 58, 55 A.L.R. 537 (1927).

Most of these and other cases giving effect to suicide exclusions deal with provisions which were effective only for a limited time and/or which provided for liability of the insurer in the amount of the premiums paid up to the time of death. The clause excepting coverage for death by suicide in the present case has no time limit on its effectiveness and does not provide for a refund of premiums, or any liability whatever on the part of the insurer. But if an incontestable clause is ineffective to bar a defense based on suicide within a limited time period or upon a refund of premiums, we fail to see how it gains effectiveness where the exclusion is permanent and there is no provision for refund. The controlling legal principle remains the same.

The basic, general power of an insurer to except the risk of death by certain specified causes notwithstanding an incontestability statute was the subject of an opinion by the late Mr. Justice Cardozo while he was serving as Chief Justice of the New York Court of Appeals, in the case of Metropolitan Life Ins. Co. v. Conway, 252 N.Y. 449, 169 N.E. 642 (1930). The case arose when an insurer sought to attach riders to its policies excluding coverage for death resulting from air travel unless the insured was a fare-paying passenger. The state superintendent of insurance refused to permit use of the rider, on the ground that it was in conflict with the New York incontestability statute. In holding use of the rider excepting coverage permissible, notwithstanding the incontestability statute, Justice Cardozo stated, in part, at 169 N.E. 642–643:

"The provision that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate as to coverage, a definition of the hazards to be borne by the insurer. It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken. * *

"Here again we must distinguish between a denial of coverage and a defense of invalidity. * * *

\* \* \* \* \* \*

"Where there has been no assumption of the risk, there can be no liability. * * The kind of insurance one has at the beginning, that, but no more, one retains until the end."

In the course of his opinion in *Conway,* Justice Cardozo noted and distinguished the broad language of the late Mr. Justice Holmes in Northwestern Mut. Life Ins. Co. v. Johnson, 254 U.S. 96, 41 S.Ct. 47, 65 L.Ed. 155 (1920), to the effect that the object of the incontestable clause was to bar any dispute on liability except as to the fact of death.[2] Many of the cases cited

---

2. The policy in Northwestern Mut. Life Ins. Co. v. Johnson, provided that, upon the suicide of the insured, sane or insane, the policy was to be "void." Distinguishing the case, Mr. Justice Cardozo stated, in part, at 169 N.E. 643:
"The clause there in question was not a limitation as to coverage. It was a provision for a forfeiture. * * * What was said by Holmes, J., of the effect of the 'incontestable clause,' must be read in the light of the question before him. It is true, as he says, that with such a clause the death of the insured, coupled with the payment of the premiums, will sustain a recovery in the face of a forfeiting condition. It is quite another thing to say that the same facts

and relied upon by Justice Cardozo in *Conway* are cases upholding the effectiveness of a suicide exclusion, some of which are cited hereinabove.

■ Our Supreme Court has stated that an insurer may, unless prohibited by statute, or public policy, make such contracts and insert such exclusions into its policies as it deems proper. Knight v. Metropolitan Life Ins. Co., 103 Ariz. 100, 437 P.2d 416, 420 (1968); Republic Nat. Life Ins. Co. v. Merkley, 59 Ariz. 125, 128, 124 P.2d 313, 314 (1942). It has long been established that, in the absence of a limiting statute, an exclusion of the risk of death by suicide is not contrary to public policy. Bigelow v. Berkshire Life Ins. Co., 93 U.S. 284, 286, 23 L.Ed. 918, 919 (1876).

We note that a life insurance policy issued today in the State of Arizona cannot exclude the risk of suicide for more than two years after the date of issuance of the policy. A.R.S. § 20–1226, subsec. A(5). (Section 26, art. 12, ch. 64, Laws 1954, effective January 1, 1955.) But there was no such statutory limitation in existence when the policy in the present case was issued in 1947, and this statute is not retroactive.[3]

For the same reason, the following statutory provision, which might otherwise be dispositive of the dispute here, is not pertinent:

"A clause in any policy of life insurance providing that the policy shall be incontestable after a specified period *shall preclude only a contest of the validity of the policy, and shall not preclude the assertion at any time of defenses based upon provisions in the policy which exclude or restrict coverage,* whether or not such restrictions or exclusions are excepted in the clause." (Emphasis ours) A.R.S. § 20–1217.

Since we find no basis for denying effect to the exclusion, we must reverse, with directions that judgment be entered for the appellant insurance company.

HATHAWAY, C. J., and KRUCKER, J., concur.

will prevail against a refusal to assume the risk. Later cases in the Federal courts develop the distinction clearly. [Citing and discussing cases]." One commentator has stated that "Mr. Justice Cardozo's clear statement, * * has been widely quoted and has been generally followed. It is accepted by most courts rather than [the] * * * much less precise statement of the late

Mr. Justice Holmes [in Northwestern Mut. Life Ins. Co. v. Johnson]." Vance on Insurance (3d (Anderson) ed. 1951) § 97, at 580.

3. A.R.S. § 20–110 provides that "[n]o provision of this title shall be deemed to modify or invalidate any contract lawfully in force prior to January 1, 1955." (Section 11, art. 1, ch. 64, Laws 1954.)