891 P.2d 926

HALSTEAD CONSULTANTS, INC., Plaintiff–Appellee,

v.

CONTINENTAL CASUALTY COMPANY, Defendant–Appellant.

No. 1 92–0395.

Court of Appeals of Arizona, Division 1, Department E.

Oct. 6, 1994.

Reconsideration Denied Oct. 31, 1994.

Review Denied March 21, 1995.

460

Anderson, Brody, Levinson, Weiser & Horwitz, P.A. by Stephen A. Myers, Phoenix, for appellant.

Hofmann, Salcito & Stevens by Leroy W. Hofmann, Phoenix, for appellee.

## OPINION

TOCI, Judge.

Halstead Consultants, Inc. ("Halstead")[1] purchased a one-year term, renewable group accidental death and dismemberment insurance policy from Continental Casualty Company ("Continental"). The policy insured "active full-time consultants [of Halstead] under age 70." Although Ann Halstead ("decedent") was not a Halstead employee, she was listed as an active, full-time consultant when the policy was first issued and each time the policy was renewed. Continental denied Halstead's claim for accidental death bene-

fits, claiming that because decedent was not an active, full-time consultant of Halstead when the policy was issued, she was not eligible for coverage.

Halstead sued Continental, alleging that Continental breached the insurance contract by failing to pay the accidental death benefit.[2] Halstead then moved for summary judgment, arguing that the policy's incontestability clause precluded Continental from denying Halstead's claim for benefits. The trial court granted Halstead's motion and entered judgment in its favor for $450,000, plus costs and attorneys' fees.

The following issues are presented: (1) is the incontestable clause applicable to this policy; (2) does the contestable period of a group insurance policy run from the inception of the policy, or is it extended each time the policy is renewed; and (3) does the incontestable clause bar the insurer from defending against a claim on the ground that the insured was never eligible for insurance under the terms of the policy?

We resolve the above issues as follows. We hold that the incontestable clause is applicable to this policy and that it begins to run when the policy is issued. In other words, the contestable period is not extended by each policy renewal. We also hold that, because decedent's eligibility for insurance was ascertainable by Continental when the policy was issued, such eligibility is not a limitation of the risk Continental contracted to insure. Consequently, the incontestable clause bars Continental from raising it as a defense. We, therefore, affirm the judgment of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

Continental sold Halstead group accidental death and dismemberment coverage for its employees. Although the original policy term was from June 10, 1986 to June 10,

1. Paul Halstead, individually, and as personal representative of Ann Halstead's estate, assigned all claims against Continental to Halstead Consultants, Inc.

2. Halstead also sued its insurance broker, Olliver/Pilcher Insurance, Inc. dba Corroon &

Black/Olliver Pilcher, Corroon & Black Corporation, Corroon & Black, Inc. Phoenix and individual employees, Parke Shaw and Judi Larson, for breach of contract and negligence. These claims were dismissed after the trial court entered judgment against Continental.

1987, the policy permitted Halstead to renew coverage after June 10, 1987, with Continental's consent. Halstead renewed the policy for successive one-year terms in 1987, 1988, and 1989.

The policy contains the following relevant terms and conditions. It insures "all persons specified in the Policy Schedule." The policy schedule describes insured persons as "ALL ACTIVE FULL–TIME CONSULTANTS UNDER AGE 70 OF [HALSTEAD] FOR WHOM APPLICATION IS MADE AS A CLASS I INSURED PERSON BY [HAL-STEAD]." The policy further provides that individual insurance is terminated on "the date the insured person ceases to be associated with [Halstead] in a capacity that makes him eligible" for coverage.

The policy also contains the following incontestability clause:

This policy constitutes the entire contract between the parties. Any statement made by [Halstead] or by any Insured Person shall be deemed a representation and not a warranty. No such statement shall void the insurance or reduce the benefits under this policy or be used in defense to a claim hereunder unless it is contained in a written instrument, a copy of which has been furnished [to Halstead] or the Insured Person. No such statement of [Halstead] shall be used at all to void this policy after it has been in force for two years from the date of its issue.

At the inception of the policy, Halstead gave written notice to Continental of the names of those active, full-time consultants for whom Halstead had applied for coverage. Thereafter, at the time of renewal of the policy, and from time to time as events warranted, Halstead gave notice to Continental of such consultants whose coverage was to be added or terminated. Continental sent acknowledgments of the applications and effective dates for such persons, and premiums were calculated on the basis of the information received from Halstead.

Decedent made her initial application for coverage in June of 1986, and was listed by Continental at that time as a Class I insured person. She was also listed as an insured person at the time of each of the three policy renewals. It is, however, undisputed that when the policy was underwritten and issued and at the time of her death, decedent was not an active, full-time consultant of Halstead.

In September 1989, after decedent's death by accidental drowning, Halstead timely submitted a notice of death and proof of loss to defendant. Following an investigation, Continental denied the claim because decedent was not eligible for coverage as an active, full-time consultant. Continental returned the full amount of all premiums Halstead paid on decedent's behalf.

Halstead sued Continental for breach of contract, claiming that Continental violated the policy by denying Halstead's claim. Halstead moved for summary judgment, arguing that the two-year contestable period had expired. According to Halstead, Continental was precluded from denying Halstead's claim on the ground that decedent was not eligible for coverage. The trial court granted Halstead's motion, finding:

The incontestability clause ... precluded Continental from voiding coverage based on the alleged misrepresentation of [decedent's] employment status two years after the date the policy was issued. The facts demonstrate that this policy was issued more than two years before [decedent's] death.

Continental appeals from the trial court's judgment in favor of Halstead in the amount of $450,000, plus costs and attorneys' fees.

## II. DISCUSSION

### A. Does the Incontestable Clause Apply at All?

In reviewing a trial court's order granting summary judgment where no disputed issues of material fact exist, we will determine only whether the trial court correctly applied the substantive law to the undisputed facts. *Norquip Rental Corp. v. Sky Steel Erectors, Inc.,* 175 Ariz. 199, 202, 854 P.2d 1185, 1188 (App.1993).

Continental argues that because decedent was eligible for insurance but shortly

before her death became ineligible, the termination provisions of the policy control rather than the incontestable clause. *See Crawford v. Equitable Life Assurance Soc'y of the United States*, 56 Ill.2d 41, 305 N.E.2d 144, 151 (1973) (incontestability clause does not apply when employee was eligible and later terminates employment). Continental points to the policy provisions that state that coverage terminates "on the date the insured person ceases to be associated with [Halstead] in a capacity that makes him eligible." Continental asserts in its brief, "we must presume [decedent] was employed or appropriately affiliated with [Halstead] until some point after the June 1989 renewal." Consequently, according to Continental, the incontestable clause provides no barrier to the insurer's right to deny benefits to one who was no longer eligible at the time of the occurrence.

Continental, however, relies upon a false premise. No evidence exists in this record that decedent was "employed or appropriately affiliated" with Halstead at the inception of the policy and that after the policy was incontestable she became ineligible because she "ceased to be associated with [Halstead]." In fact, in its Rule 26.1 statement of the "Factual Basis of the Defenses of Continental Casualty," Continental represented to the court that the decedent *"was not at the time that this policy was underwritten and issued,* nor was she at the time of her death, either an employee or a 'full-time consultant' of [Halstead]." (Emphasis added.) Consequently, the policy language providing that coverage will terminate "on the date the Insured Person ceases to be associated with [Halstead] in a capacity that makes [her] eligible," is not applicable.

## B. Did the Two–Year Contestable Period Expire Before Decedent Died?

■ Continental's policy contains an "incontestable clause" that states: "No ... statement of the holder shall be used at all to void this policy after it has been in force for two years from the date of its issue." Continental argues that the contestable period commenced anew with each annual renewal of the policy and, therefore, it did not expire before decedent's death. In other words,

according to Continental, because the policy is renewed for only a one-year term at a time, "each renewal constitutes a new contract ... and the incontestable period had not run" when decedent died. We disagree.

Numerous authorities establish that the contestable period commences upon the issuance of the policy. *See, e.g.*, 1A John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 312, at 324–27 (1981). Ariz. Rev.Stat.Ann. ("A.R.S.") section 20–1260 (1990), provides that the validity of a policy may not be contested "after it has been in force for two years from its date of issue." Furthermore, in *Bonitz v. Traveler's Insurance Co.*, 374 Mass. 327, 372 N.E.2d 254, 257 (1978), the court rejected an argument similar to Continental's:

> The reissue of the policy, though it might change various provisions, could not change the incontestability clause required by statute. Nothing in the record indicates that any facts relevant to the eligibility issue changed, and the insurer in these circumstances could not extend the incontestability period in this way.

■ Here, the facts establish that the contestable period commenced when the policy was issued. The policy itself refers to the "date of issue." When the policy was issued in June of 1986, decedent was not eligible for coverage because she was not a full-time consultant. Although the policy was renewed annually and each time listed decedent as a full-time consultant, no facts relevant to the issue of her eligibility changed. She remained ineligible from the inception of the policy. Furthermore, if we were to adopt Continental's position, the two-year contestable period would never expire in policies renewed annually. For the above reasons, then, we hold that the contestable period runs from the date of issue of the policy and not from the date of renewal. Thus, the two-year contestable period expired before decedent's death.

## C. Does the Incontestability Clause Preclude Continental from Contesting Decedent's Eligibility for Coverage?

■ A respectable line of authority cited by Continental holds that a group life insur-

er's eligibility requirement is a limitation of the risk insured against—a limitation of coverage—rather than a policy condition which, when breached, may render the policy invalid. According to these cases, an insurer's challenge to an employee's eligibility for coverage is not an attack on the validity of the policy. Thus, an insurer may challenge an employee's eligibility after the contestable period expires. Continental argues that be- · cause these cases are "intellectually honest," we should follow them. We are not persuaded.

■ We conclude that only those risks the insurer could not discover at the inception of the policy are properly viewed as a limitation of the risk of insurance, that is, a limitation of coverage. Here, because Continental could have discovered decedent's employment status when the policy was issued, her status as a full-time consultant is a policy condition and not a policy limitation of coverage. Thus, Continental's challenge to decedent's eligibility, because it is an assertion that the policy is invalid because of a breach of a policy condition, is barred by incontestability.

■ We begin our analysis with the traditional proposition that incontestable clauses bar an insurer from challenging, after expiration of the contestable period, the validity of a life insurance policy. Such clauses do not, however, bar an insurer's assertion that the claimed occurrence is not within the scope of coverage. *See* 1A Appleman, *supra,* § 331, at 372–73. The latter proposition is commonly traced to the opinion of Chief Judge Cardozo in *Metropolitan Life Insurance Co. v. Conway,* 252 N.Y. 449, 169 N.E. 642 (1930).

In *Conway,* an insurer applied to the superintendent of insurance to include in a rider a provision for the exclusion of aviation risk from the coverage of an individual life insurance policy. *Id.* 169 N.E. at 642. The superintendent found that such a clause was inconsistent with the state's statute providing that every policy " 'shall be incontestable after it has been in force ... for a period of two years.' " *Id.* (citation omitted). On appeal, the superintendent's ruling was overturned. Cardozo found that the rider and

statute were "consistent and harmonious." *Id.* He stated:

> [The incontestability provision] is not a mandate as to coverage, a definition of the hazards to be borne by the insurer. It means only this, that within the limits of coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken.

*Id.*

The broad distinction drawn in *Conway* between a policy's coverage and its validity has been generally recognized. *See* 43 Am. Jur.2d *Insurance* § 766, at 834 (1982); *see also National Life & Casualty Ins. v. Blankenbiller,* 89 Ariz. 253, 255–56, 360 P.2d 1030, 1032 (1961) (incontestability bars defenses going to the invalidity of the policy but not defenses relating to excluded risks); *National Producers Life Ins. Co. v. Rogers,* 8 Ariz. App. 53, 55–56, 442 P.2d 876, 878–79 (1968) (before adoption of A.R.S. § 20–1226 (1990) incontestable clause did not bar insurer from limiting risk by excluding death by suicide).

Nevertheless, courts have had difficulty in applying the validity-coverage distinction to group policies. The competing cases all purport to apply the *Conway* rule, but they reach different results because they view group life insurance policies differently. Cases applying the bar of incontestability to an employee's eligibility under a group policy treat the policy as a policy of *individual* insurance on the life of the employee. Consequently, these cases hold that the exclusion of *all* coverage for a named individual is a challenge to the *validity* of the employee's policy barred by the incontestable clause. *See, e.g., Simpson v. Phoenix Mut. Life Ins. Co.,* 30 A.D.2d 265, 291 N.Y.S.2d 532, 536 (1968), *aff'd,* 24 N.Y.2d 262, 299 N.Y.S.2d 835, 247 N.E.2d 655 (1969).

In contrast, those cases finding that an eligibility challenge is not barred by incontestability tend to focus on the group nature of group life insurance. Such cases conclude that the "policy" is the group policy. According to these cases, because a challenge to an individual employee's eligibility for coverage is not an attack on the validity of the (group) policy, the challenge is not barred by

incontestability. *See, e.g., Crawford,* 305 N.E.2d at 150. Continental follows this approach when it contends that because it "is not contesting the validity of Policy No. SR83075135," incontestability does not bar its defense that decedent was not eligible for insurance.

Thus, depending on which group policy analysis is followed, the cases are almost evenly divided in their results. The bar of the incontestability clause has been enforced against a claim of ineligibility in California, Georgia, Iowa, Louisiana, Massachusetts, New York, Oklahoma, Pennsylvania, Utah, and West Virginia.[3] Those federal court decisions contrary to the state cases cited above are not authoritative. *Cf. First Pennsylvania Banking & Trust Co. v. United States Life Ins. Co.,* 421 F.2d 959, 962–63 (3d Cir.1969) (applying Pennsylvania law); *Washington Nat'l Ins. Co. v. Burch,* 270 F.2d 300, 302–04 (5th Cir.1959) (applying Georgia law); *Fisher v. United States Life Ins. Co.,* 249 F.2d 879, 882–85 (4th Cir.1957) (applying New York law). Nevertheless, there are authoritative contrary decisions under the law of Florida, Illinois, New Hampshire, and Ohio.[4]

*Simpson,* cited above, is the best example of the cases that hold that a challenge to an individual's eligibility under a group life insurance policy is a challenge to the validity of that individual's insurance. There, the New York appellate division, citing to *Conway,* concluded that

> the contest here is not … a challenge directed solely as to coverage … This contest with the beneficiary of a certificate holder, consisting of an attack against the status of such holder as a qualified insured, is in effect a contest directed to the *validity* of the insurance which is represented by such certificate and for which premiums were paid and accepted. The defendant is asserting that Simpson never had any rights; that there never was a valid contract of insurance as to him; and that under no circumstances would the defendant be obligated to him or his beneficiary.

*Simpson,* 291 N.Y.S.2d at 536 (emphasis added).

New York's highest court affirmed the appellate division. The Court of Appeals of New York noted that "[g]roup life insurance, though contracted for by an employer, is not indemnity insurance but simply insurance upon the life of employees for their personal benefit and the protection of those dependent upon them for financial security." *Simpson,* 299 N.Y.S.2d at 840, 247 N.E.2d at 658. The court thus concluded that the insured's challenge to an individual's eligibility for insurance was incontestable after the policy had been in effect for the statutory two-year period. *Id.*

*Crawford* represents the opposite, and in our view, the least persuasive approach to the validity-coverage distinction. That case applied the term "coverage" found in *Conway* to the risk to the insured group as a whole rather than to the risk to an individual insured:

> In the case of group life insurance … the master policy undertakes to provide insurance for a collection of unnamed persons defined only in terms of membership in a class, such as the employees of a certain company. To ascertain whether a person is insured necessitates a determination of whether he is in fact a member of the class.

**3.** *John Hancock Mut. Life Ins. Co. v. Dorman,* 108 F.2d 220, 223–24 (9th Cir.1939) (applying California law); *Equitable Life Assurance Soc'y v. Florence,* 47 Ga.App. 711, 171 S.E. 317 (1933); *Freed v. Bankers Life Ins. Co.,* 216 N.W.2d 357, 358–60 (Iowa 1974); *Allison v. Aetna Life Ins. Co.,* 158 So. 389 (La.App.), *modified on other grounds,* 161 So. 645 (1935); *Bonitz v. Travelers Ins. Co.,* 374 Mass. 327, 372 N.E.2d 254 (1978); *Simpson v. Phoenix Mut. Life Ins. Co.,* 30 A.D.2d 265, 291 N.Y.S.2d 532 (App.Div.1968), *aff'd,* 24 N.Y.2d 262, 299 N.Y.S.2d 835, 247 N.E.2d 655 (1969); *Hulme v. Springfield Life Ins. Co.,* 565 P.2d 666 (Okla.1977); *Groll v. Safeco Life Ins. Co.,* 388 Pa.Super. 556, 566 A.2d 269 (1989);

*Cragun v. Bankers Life Co.,* 28 Utah 2d 19, 497 P.2d 641 (1972); *Poffenbarger v. New York Life Ins. Co.,* 277 F.Supp. 726, 729–30 (S.D.W.Va. 1967) (citing *Morris v. Missouri State Life Ins. Co.,* 114 W.Va. 278, 171 S.E. 740 (1933)).

**4.** *Home Life Ins. Co. v. Regueira,* 313 So.2d 438, 439–41 (Fla.Dist.Ct.App.1975); *Crawford v. Equitable Life Assurance Soc'y of the United States,* 56 Ill.2d 41, 305 N.E.2d 144 (1973); *Fisher v. Prudential Ins. Co. of Am.,* 107 N.H. 101, 218 A.2d 62 (1966); *Aetna Life Ins. Co. v. Hooper,* 19 Ohio L.Abs. 123 (App.1935).

*Crawford,* 305 N.E.2d at 149. In direct contrast to *Simpson,* the *Crawford* court reasoned that, because a challenge to a single certificate-holder is not an attack on the overall validity of the master policy, there is no challenge to the "validity" of the policy. *Id.* 305 N.E.2d at 150. The *Crawford* court thus allowed the insurer to challenge an individual's eligibility for coverage even after the period of contestability had expired. *Id.*

Arizona has perpetuated the validity-coverage distinction by adopting the traditional standard for incontestability in its group life incontestability statute. The statute provides that in "group life policies ... the *validity* of the policy shall not be contested, except for nonpayment of premiums, after it has been in force for two years from its date of issue...." A.R.S. § 20–1260 (1990) (emphasis added). Neither the statute nor the incontestability clause in this policy, however, provides a definition of "validity" or explicitly resolves which of the two conflicting approaches to group life "validity" should be adopted.[5]

Most courts that have addressed this issue have not analyzed the policies underlying incontestability; they have instead reached a result simply by characterizing the challenge as one involving either "validity" or "coverage." A few cases, however, have gone beyond these labels and examined the public policies that give rise to the doctrine of incontestability. We agree with this approach. In deciding whether to characterize an individual's eligibility under a group policy as either a matter of "validity" or of "coverage," we think it helpful to examine the rationale for incontestability.

Incontestability balances the insurer's interests in detecting misrepresentations against the courts' and individual insureds' interests in not having to respond to an attack on the validity of a policy that has been in effect for a number of years. *See* 1A Appleman, *supra,* § 311, at 311–12 at n. 13. The courts have a stake in the enforcement of incontestability because allowing extended litigation of issues of policy validity would greatly increase the burden on the courts.

*Id.* at 305. Individual insureds have a similar interest "since most contests would arise after the insured's death, [when] a beneficiary is in a deplorable condition to wage battle with a large insurer over statements which may have been made years earlier." *Id.* at 305–06. Against these interests are weighed the insurers' interest in detecting misrepresentations and society's interest in not permitting fraud to occur. *Id.*

Incontestability statutes strike a balance between these interests. As Appleman notes, although fraud is not to be sanctioned, "only a minuscule percentage of the population ever resorts to such devious conduct, and it is considered desirable to have a cutoff time as to ordinary misrepresentations...." *Id.* Moreover, incontestability does not in cases of misrepresentation categorically deny justice to an insurer. Instead, it simply provides a limited period of time after the formation of the insurance contract within which the insurer may investigate and challenge such misrepresentations. *Blankenbiller,* 89 Ariz. at 256, 360 P.2d at 1032 (incontestability clause gives the insurer a reasonable period of time to investigate and protect its rights). After this period, validity becomes incontestible in order to provide repose in the policy. *See Button v. Connecticut Gen. Life Ins. Co.,* 847 F.2d 584, 588 (9th Cir. 1988), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 250 (1988) (construing Arizona law) (citing 18 George J. Couch, *Cyclopedia of Insurance Law* § 72.2, at 283–84 (2d ed. 1983)).

Against this backdrop we turn to the fundamental issue: is the policy language insuring active, full-time consultants of Halstead against accidental death a limitation of Continental's risk that can be asserted even though the contestable period has expired? Or, is such language a condition of insurance that is now barred because it was not asserted within the contestable period? If we follow *Crawford,* we must hold that Continental limited its risk to those who are active, full-time consultants of Halstead. In view of the policy rationale for incontestability, however, we reject *Crawford.* We conclude that

---

**5.** Although the incontestable clause in the Continental policy arguably is not as onerous as the Arizona statute, the statute governs. *See Blankenbiller,* 89 Ariz. at 256, 360 P.2d at 1032.

*Crawford* represents a significant and unwarranted shift in the meaning of "coverage" from that originally announced in *Conway*. See *Bonitz,* 372 N.E.2d at 256.

In contrast to *Crawford, Simpson* tells us that the distinction between a group policy condition and a coverage limitation is "discoverability." 247 N.E.2d at 658. Risks that could be "ascertained by the insurer by investigation at the time the policy of insurance was issued" are conditions of insurance which, if not challenged within the contestable period, are borne by the insurer. *Id.* 247 N.E.2d at 657. Because we conclude that discoverability serves the ends for which the incontestability statute was intended, we adopt this approach.

Here, if Continental did not want to insure the decedent, it had two years within which to make that determination. Continental could have investigated the employment records of Halstead when the policy was issued or at any time before the contestable period expired. This investigation might have involved nothing more than asking for payroll records or some other evidence that decedent's status was that of an "active, full-time consultant" for Halstead.

Moreover, had the company investigated and successfully asserted, within the contestable period, decedent's ineligibility for insurance, this lawsuit would have been averted. Continental would not have experienced a loss, and the decedent might have obtained substitute accidental death coverage. Thus, the legitimate interests of both the decedent and Continental would have been protected.

Our conclusion that "discoverability" is the appropriate test for determining the scope of incontestability is supported by our recent decision in *Greves v. Ohio State Life Insurance Co.,* 170 Ariz. 66, 821 P.2d 757 (App. 1991). There, we cited with approval the case of *Cragun v. Banker's Life Co.,* 28 Utah 2d 19, 497 P.2d 641 (1972). *Greves,* 170 Ariz. at 71, 821 P.2d at 762. In *Cragun,* the Utah Supreme Court held that a group policy insurer cannot, after the incontestable period has expired, contest an employee's eligibility for insurance. 497 P.2d at 643. In reaching that conclusion, the court stated that "[r]isks which are considered limitations are those

which could not be ascertained by the insurer by investigation at the time the policy ... was issued." *Id.*

Furthermore, the language of Continental's policy itself supports our holding that Continental's eligibility requirement is a condition of insurance rather than a coverage limitation. The term "active, full-time consultant," is never defined in the policy. Neither does the policy state that to be eligible for coverage one must be an active, full-time consultant. Nor does the policy exclude from coverage those who have not attained such status. *Cf. National Producers,* 8 Ariz. App. at 55, 442 P.2d at 878 (excluded risks are not barred by incontestability). Furthermore, Continental later agreed by endorsement to extend coverage for accidental death to those "85 and older." Because octogenarians normally will not fall within the definition of active, full-time consultants, this endorsement tends to refute the argument that the policy's eligibility requirements are a limitation of the risk rather than a condition of insurance. Thus, reading the policy in its entirety, we find nothing in it that indicates that Continental limited its risk to those who are active, full-time consultants of Halstead.

Put in another way, the hazard Continental insured against was the risk to the decedent of accidental death or dismemberment. We agree with Halstead that decedent's status as a full-time consultant would seem to have little to do with that risk. Nothing in this record indicates that, at the time the policy was issued, Continental would have refused to insure decedent individually against the risk of accidental death had Continental known that decedent was not Halstead's active, full-time consultant.

 Finally, we address Continental's argument that it is fundamentally unfair to require it to pay death benefits to one who was never eligible for coverage. We are not persuaded by this argument. As we noted above, incontestability does not provide that Continental must extend insurance to the decedent. Incontestability does provide, however, that having carried decedent on its roster for more than two years, and having accepted the premiums covering the risk of

the accidental loss of her life, Continental cannot *now* assert that she was ineligible for insurance. Unless the defense goes to a limitation of the risk Continental insured, Continental must either raise the issue within the period of contestability or be forever barred.

### III. CONCLUSION

For the reasons stated above, we conclude that Continental's defense that decedent was not eligible for coverage as an active, full-time consultant is barred by incontestability. The trial court's decision is affirmed.

Upon compliance with Rule 21, Arizona Rules of Civil Appellate Procedure, we award attorney's fees and costs to Halstead pursuant to A.R.S. section 12–341.01.

FIDEL, P.J., and CONTRERAS, J., concur.